## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 04-41332-H4-11** |
| NAZU, INC., | § | **CHAPTER 11** |
| DEBTOR | § | |

## MEMORANDUM OPINION ON
## THE DEBTOR'S OBJECTION TO TEMEKA FARR'S PROOF OF CLAIM AND
## TEMEKA FARR'S MOTION TO DEEM PROOF OF CLAIM AS TIMELY FILED

### I. INTRODUCTION

Nazu, Inc. (the Debtor) commenced this case when it filed its bankruptcy petition on August

6, 2004. [Docket No. 1.]  On August 26, 2005, Temeka Farr (Farr) filed a Proof of Claim in this

bankruptcy case in the amount of $30,125.00 based on a Default Judgment *Nunc Pro Tunc* (the

Default Judgment *Nunc Pro Tunc*) rendered against the Debtor in County Court at Law Number 1

of Harris County, Texas (the State Court). [Claim No. 12.]  On December 19, 2005, the Debtor filed

Debtor's Objection to Claim Filed by Temeka R. Farr and Request for Hearing (the Debtor's

Objection).  [Docket No. 80.]  In its Objection, the Debtor asserts that it was not the responsible

party as alleged in Farr's State Court lawsuit and that the Default Judgment *Nunc Pro Tunc* is

therefore void.  On January 13, 2006, Farr filed Creditor Temeka R. Farr's Response to Objection

to Claim Filed by Debtor, Motion to Deem Proof of Claim as Timely Filed, and Request for Hearing

(Farr's Motion to Deem Proof of Claim as Timely Filed).  [Docket No. 88.]  For the reasons set forth

in this opinion, the Court overrules the Debtor's Objection and grants Farr's Motion to Deem Proof

of Claim as Timely Filed.

On May 25, 2006, the Court held a hearing on the Debtor's Objection and Farr's Motion to Deem Proof of Claim as Timely Filed.[1]  On July 12, 2006, this Court made its oral Findings of Fact and Conclusions of Law in open court.  This Court has reduced its Findings of Fact and Conclusions of Law into writing in this Memorandum Opinion, which will be entered on the docket.  To the extent that any of this Court's oral Findings of Fact and Conclusions of Law conflict with this Court's written Findings of Fact and Conclusions of Law, the written Findings of Fact and Conclusions of Law shall govern and shall be considered amendments to the oral Findings of Fact and Conclusions of Law.

The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52 as incorporated into Federal Rule of Bankruptcy Procedure 7052.  To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such.  The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II.  FINDINGS OF FACT

The facts, in chronological order, either as stipulated to or admitted by counsel of record, as admitted in the briefs and filings, or as adduced from the testimony are as follows:

---

[1] The Scheduling Order for the Debtor's Objection indicates that the hearing on the Objection would be held on May 25, 2006, but does not expressly indicate that Farr's Motion to Deem Proof of Claim as Timely Filed would also be heard on this date. [Docket No. 92.] Nevertheless, the arguments of counsel, testimony of the witnesses, and evidence admitted at the May 25, 2006 hearing clearly concerned both the Debtor's Objection and Farr's Motion to Deem Proof of Claim as Timely Filed.  Therefore, there is no question that the parties consented to a hearing on the merits on May, 25, 2006 regarding Farr's Motion to Deem Proof of Claim as Timely Filed.  *See Yaquinto v. Greer*, 81 B.R. 870, 875 (N.D. Tex. 1988) ("This court need not decide today whether a bankruptcy court's § 105(a) powers reach as broadly as the trustee contends.  This is so because appellants failed to make proper objection in the bankruptcy court and, therefore, tried the turnover action by consent."); *Lavean v. Cowels*, 835 F. Supp. 375, 382-83 (W.D. Mich. 1993) ("All that is required is that the issue be tried by consent, and consent is generally inferred from a failure to object.").

1.  Farr filed a civil suit (the State Court Suit)[2] against the Debtor as "Nazu, Inc. d/b/a 7 Evenings Food Stores" on May 6, 2002 in State Court. [Farr Ex. No. 1.][3]  In her State Court Petition (the Petition), Farr alleged that she was brutally beaten by employees Sajjad Kahn and Khurram Kahn (the Individual Defendants) when she was shopping on May 8, 2000 at the 7 Evenings Food Stores located at 8900 South Braeswood, Houston, Harris County, Texas 77074. [*Id.* at ¶ III, VI.]

2.  The Debtor is a Texas corporation solely owned by Aziz Shah (Shah), who also serves as the Debtor's registered agent and sole officer, director, and president. [Docket No. 94, ¶ 1.] The Debtor's business is operating a single convenience store: the "7 Evening Food Store," located at 525 Crosstimbers, Houston, Harris County, Texas 77022.[4]  *Id.*  There are several stores using similar names in Harris County, Texas.  *Id.*

3.  On May 13, 2002, the Debtor was served with Farr's State Court Suit through its registered agent, Shah. [Farr Ex. No. 2.]

4.  The Debtor failed to answer Farr's Petition. [Farr Ex. No. 3; Docket No. 96, ¶ 4.]

5.  Prior to rendition of the Default Judgment, the Individual Defendants were nonsuited for lack of service. [Docket No. 96, ¶ 5.]

---

[2]This cause was styled No. 771,664, *Temeka R. Farr v. Nazu, Inc. d/b/a 7 Evenings Food Stores, Sajjad Khan and Khurram Khan*, in the County Court at Law No. 1, Harris County, Texas.

[3]"Farr Ex. No. ___ " and "Debtor's Ex. No. ___ " refer to the exhibits that the Farr and the Debtor admitted during the May 25, 2006 hearing on the Debtor's Objection.

[4]The Debtor's brief in support of its Objection states, "Debtor's business is operating a convenience store . . . at the single location at 521 Crosstimbers, Houston, Texas 77022." [Docket No. 94] This Court has concluded that this is a typographical error and that the correct address is 525 Crosstimbers, Houston, Texas 77022. The certified copy of the Direct Index of Assumed Name Records from the Harris County Clerk's Office admitted as Debtor's Exhibit Number 16 shows that the address for the Debtor's business is 525 Crosstimbers. Additionally, Shah testified at the May 25, 2006 hearing that 525 Crosstimbers is the correct address of the Debtor's business.

6.    After holding a hearing on April 16, 2004, the State Court rendered the Default Judgment against the Debtor on May 26, 2004.  [Farr Ex. No. 3; Debtor Ex. No. 9.]

7.    Counsel for Farr represented to this Court at the May 26, 2006 hearing that notices of the proceedings in Farr's State Court Suit were sent to the Debtor, and the Debtor does not dispute that it received notice of the April 16, 2004 hearing.  [*See* Farr Ex. Nos. 3, 5; Debtor Ex. No. 9.]

8.    On May 26, 2004, the Harris County Clerk's Office sent notice of the Default Judgment to the Debtor.  [Farr Ex. No. 4.]

9.    The Debtor filed its Chapter 11 voluntary petition on August 6, 2004.  [Docket No. 1.]

10.   The Debtor failed to list Farr as a creditor in its schedules.  [Docket Nos. 1, 8.]

11.   On September 23, 2004, Farr obtained a Default Judgment *Nunc Pro Tunc* to correct certain clerical errors.  [Farr Ex. No. 5; Docket No. 96, ¶ 9.]

12.   On September 27, 2004, the Harris County Clerk's Office sent notice of the Default Judgment *Nunc Pro Tunc* to the Debtor.  [Farr Ex. No. 6.]

13.   On November 3, 2004, Farr abstracted the Default Judgment *Nunc Pro Tunc*, and the Abstract of Judgment was filed with the Harris County Clerk's Office on December 21, 2004. [Farr Ex. No. 7.]

14.   Farr did not learn of the Debtor's bankruptcy until a constable attempted to execute on the Default Judgment *Nunc Pro Tunc* between the months of January and April of 2005. [Docket No. 96, ¶ 12; Debtor Ex. No. 12.]

15.   Farr filed her Proof of Claim on August 26, 2005.  [Claim No. 12; Farr Ex. No. 8.]

16.   The Debtor filed its Objection on December 19, 2005.  [Docket No. 80.]

17.   On January 13, 2006, Farr filed her Response to the Debtor's Objection, Motion to Deem Proof of Claim as Timely Filed, and Request for Hearing. [Docket No. 88.]

18.   This Court held a hearing on the Debtor's Objection on May 25, 2006. The Court admitted exhibits submitted by both parties, and Farr and Shah testified. [Docket Entry May 25, 2006.]

19.   Additionally, on May 25, 2006, the Debtor filed a brief in support of its Objection. [Docket No. 94.]

20.   On June 8, 2006, Farr filed a memorandum of law in support of her Proof of Claim. [Docket No. 96.][5]

### III. CREDIBILITY OF WITNESSES

At the May 25, 2006, the Court heard testimony from Farr and Shah. After listening to the testimony and observing the witnesses as they testified, the Court makes the following determinations regarding the credibility of the witnesses:

Farr testified that she was assaulted by the Individual Defendants at the 7 Evenings Food Store at 8900 South Braeswood. Counsel for the Debtor questioned Farr extensively about the proceedings in the State Court Suit, including service of Farr's Petition and how her attorney determined that the Debtor was the appropriate party to sue in the State Court. As Farr is not an attorney, she was unable to testify as to the legal significance of the proceedings in the State Court Suit, including rendition of the Default Judgment. The Court finds that Farr's testimony was credible but did not significantly help either party.

---

[5]Creditor Temeka R. Farr's Memorandum of Law in Support of Creditor's Claim Against Debtor Nazu, Inc. appears on the docket twice at Docket Numbers 95 and 96. The documents at Docket Numbers 95 and 96 are identical and both were filed on June 8, 2006. In this Memorandum Opinion, the Court will refer to Docket Number 96 when citing to this document.

Shah testified that he received service of Farr's Petition and referred the matter to his attorney, Andrew McStay (McStay), who telephoned "Ms. Sanchez." Shah also testified that he spoke with "Ms. Sanchez," and "she said . . . 'don't worry about it,'" and that "Ms. Sanchez" separately told McStay and Shah that "it's fine." From these conversations, Shah determined that no further action was required with regard to Farr's Petition. Monica V. Funchess (Funchess) has served as Farr's attorney in the instant dispute and in the State Court Suit, and the Court is uncertain as to the identity of Ms. Sanchez. The Debtor's Exhibit No. 15 is a letter from McStay to "Monica V. Sanchez" at Funchess' business address. Apparently, Shah and McStay confused Funchess' surname as being Sanchez. Funchess denied that she had ever told Shah or McStay that they did not have to take any action in Farr's State Court Suit.[6] Shah also seemed confused about other matters. By way of only one example, after testifying that Farr's Petition was served upon him as the registered agent for the Debtor, Shah subsequently contradicted himself by testifying that he did not know about the suit until the Constable attempted to serve him with the papers related to the execution of the Default Judgment *Nunc Pro Tunc*, which occurred sometime between February and April of 2005. [*See* Debtor Ex. Nos.10-13.] Immediately thereafter, Shah agreed that he did, in fact, learn of the lawsuit in May of 2002, which was when Farr's Petition was served on him as the registered agent for the Debtor. [*See* Farr Ex. No. 2.] Even if Shah was being truthful, this Court finds that his testimony was not entirely credible due to his confusion of matters essential to this dispute.

---

[6]The Court notes that Funchess did not give testimony on this point, but rather made this representation to the Court during the hearing. This Court reminded her that the Court had sustained the objection that she had lodged earlier in the hearing when Shah began testifying that he took Farr's Petition to McStay, who telephoned "Ms. Sanchez" and then told Shah "not to worry about anything." Accordingly, there is no testimony that Funchess told McStay "not to worry about anything." There is, on the other hand, testimony that Shah was properly served, that Shah retained McStay as his attorney, that McStay knew Shah had been served, and that no answer on behalf of Shah was filed.

## IV. CONCLUSIONS OF LAW

In its Objection, the Debtor makes the following objections: (A) the Default Judgment *Nunc Pro Tunc* is defective;[7] (B) Farr's Claim does not provide a proper accounting; (C) the automatic stay bars Farr's Claim because it is based on a judgment rendered after the Debtor filed its bankruptcy petition; and (D) Farr's Claim is not in the best interests of the creditors of the estate. [Docket No. 80.]   On the day of the hearing on the Debtor's Objection, the Debtor filed a brief in support of its Objection [Docket No. 94], raising additional objections not raised in its Objection [Docket No. 80]. This Court considers any objection not specifically stated in the Debtor's Objection [Docket No. 80] waived. *See Hollingsworth v. Kaler* (*In re Hollingsworth*), 331 B.R. 399, 400 n.2 (B.A.P. 8th Cir. 2005) (finding that "[t]o the extent the Debtor believes the Creditor's claims are invalid, she should have filed an objection to the Creditor's proofs of claim.  By failing to do so, the Debtor waived any objection to the merits of Creditor's claims.").  For this reason, the Court will only consider those objections expressly raised in the Debtor's Objection.  [Docket No. 80.]

The Court overrules the Debtor's Objection for the following reasons.  First, the *Rooker-Feldman* doctrine prevents this Court from reviewing the Default Judgment *Nunc Pro Tunc*.  This Court must give the Default Judgment *Nunc Pro Tunc* the same deference as a Texas state court would.  The Debtor was aware that it was misidentified in the State Court Suit and that its inaction would result in a default judgment against it.  Nevertheless, the Debtor failed to answer Farr's State Court Suit and chose not to avail itself of any of the remedies available in Texas state courts.  Therefore, giving the Default Judgment *Nunc Pro Tunc* the same deference as a Texas state court

---

[7]The Debtor argues that the Default Judgment *Nunc Pro Tunc* is defective for the following reasons: (1) the Debtor's business name is "Nazu, Inc. d/b/a 7 Evening Food Store;" therefore, the Debtor is not the responsible party as to the Default Judgment *Nunc Pro Tunc* rendered against "Nazu, Inc., d/b/a 7 Evenings Food Stores;" (2) the Default Judgment *Nunc Pro Tunc* is not a final judgment because  it did not dispose of all parties; and (3) the Debtor was not properly served with citation because the State Court Original Petition Citation (Citation) is addressed to "Nazu, Inc. d/b/a 7 Evenings Food Stores" instead of "Nazu, Inc., d/b/a 7 Evening Food Store." [Docket No. 80.]

7

would, this Court cannot grant the Debtor relief from the Default Judgment *Nunc Pro Tunc*. Second, Farr's Proof of Claim provides a proper accounting. Third, because the Debtor failed to schedule Farr as a creditor, Farr unknowingly violated the automatic stay when she sought the Default Judgment *Nunc Pro Tunc*, obtained the Abstract of Judgment, and attempted to execute on the Default Judgment *Nunc Pro Tunc*. Because these violations of the automatic stay resulted from the Debtor's failure to schedule Farr, Farr's Claim will be allowed and paid pursuant to the plan confirmed in this case. Fourth, whether Farr's Claim is in the best interests of the creditors of the estate is not determinative as to whether Farr's Claim will be allowed and paid pursuant to the plan confirmed in this case.

A.    **Pursuant to the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to grant the Debtor relief from the Default Judgment *Nunc Pro Tunc*.**

The *Rooker-Feldman* doctrine prevents this Court from granting the Debtor relief from the Default Judgment *Nunc Pro Tunc*. Under the *Rooker-Feldman* doctrine, "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994) (citations and alterations omitted). Further, "[w]hen issues raised in federal court are inextricably intertwined with a state judgment and the court is in essence being called upon to review the state-court decision, the [federal] court lacks subject matter jurisdiction to conduct such a review." *Davis v. Bayless, Bayless & Stokes*, 70 F.3d 367, 375 (5th Cir. 1995) (citations and internal quotation marks omitted). Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction over collateral attacks on state court judgments unless a particular law provides otherwise. *Liedtke*, 18 F.3d at 318 (citing *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983)).

In *In re Lease Oil Antitrust Litigation* (*No. II*), 16 F. Supp. 2d 744, 757 (S.D. Tex. 1998),

*aff'd*, 200 F.3d 317 (5th Cir. 2000), the court observed that there are two requirements for

application of the *Rooker-Feldman* doctrine:

> First, the plaintiff must have been a party to a final judgment in state court judicial
> proceedings, *Johnson v. DeGrandy*, 512 U.S. 997, 114 S. Ct. 2647, 2654, 129 L. Ed.
> 2d 775 (1994); *Johnson v. Odom*, 901 F. Supp. 220, 223 (W.D. La. 1995). Second,
> the plaintiff's federal complaint must seek "what in substance would be an appellate
> review of the state judgment(s) in a United States District Court" *Id.* (quoting
> *Johnson*, 114 S.Ct. at 2654).

*Lease Oil*, 16 F. Supp. 2d at 757. Both of these requisites are met in the instant dispute. Because

a Texas Court rendered the Default Judgment *Nunc Pro Tunc*, this Court looks to Texas substantive

law to determine the preclusive effect of the Default Judgment *Nunc Pro Tunc*. *Gober v. Terra +*

*Corp.* (*In re Gober*), 100 F.3d 1195, 1201 (5th Cir. 1996) (citing *Marrese v. Am. Acad. of*

*Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 1331-32, 84 L. Ed. 2d 274 (1985));

*Gauthier v. Cont'l Diving Servs.*, 831 F.2d 559, 561 (5th Cir. 1987).

1.      **The Default Judgment *Nunc Pro Tunc* is a final judgment.**

The Default Judgment *Nunc Pro Tunc* is a final judgment. Under Texas law, a judgment is

not final unless it "disposes of all parties and all issues in a lawsuit." *See Houston Health Clubs, Inc.*

*v. First Court of Appeals*, 722 S.W.2d 692, 693 (Tex. 1986) (citing *Schlipf v. Exxon Corp.* 644

S.W.2d 453, 454 (Tex. 1982)). The Debtor argues that the Default Judgment *Nunc Pro Tunc* is not

final because it did not dispose of the Individual Defendants. [Docket No. 94, ¶¶ 19-20.] In this

matter, the Individual Defendants were nonsuited for lack of service. [Docket No. 96, ¶ 5.] The

State Court subsequently signed the Default Judgment on May 26, 2004 against the only remaining

party, the Debtor, thereby disposing of all parties. [Docket No. 96, ¶5; Farr Ex. 3.]   *See Farmer v.*

*Ben E. Keith Co.*, 907 S.W.2d 495, 496 (explaining "that the appellate timetable runs from the

signing date of whatever order makes a judgment final and appealable, i.e. whatever *order* disposes

of any parties or issues remaining before the court," and citing *Martinez v. Humble Sand & Gravel, Inc.*, 875 S.W.2d 311, 313 (Tex. 1994)).

Additionally, under Texas law, a judgment "entered in a case set for a conventional trial on the merits" is "presumed final;" however, default judgments and summary judgments are not presumed final. *Houston Health Clubs*, 722 S.W.2d at 693 (citations omitted); *see Coastal Banc SSB v. Helle*, 48 S.W.3d 796, 799-80 (Tex. App.—Corpus Christi 2001, pet. denied). The Texas Supreme Court later clarified its rule regarding finality of default judgments by stating the following rule:

> [I]n cases in which only one final and appealable judgment can be rendered, a judgment issued without a conventional trial is final for purposes of appeal if and only if it either actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties.

*Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192-93 (Tex. 2001). In *Lehmann*, the Texas Supreme Court held "that inclusion of a Mother Hubbard clause—by which we mean the statement, 'all relief not granted is denied,' or essentially those words—does not indicate that a judgment rendered without a conventional trial is final for purposes of appeal." *Lehmann*, 39 S.W.3d at 203. However, the Texas Supreme Court also stated that "if the language of the order is clear and unequivocal, it must be given effect despite any other indications that one or more parties did not intend for the judgment to be final." *Id.* at 206. The Texas Supreme Court suggested that "[a] statement like, 'This judgment finally disposes of all parties and all claims and is appealable,' would leave no doubt about the court's intention." *Id.* In the instant dispute, the Default Judgment and Default Judgment *Nunc Pro Tunc* specifically state, "This is a Final Judgment disposing of ALL issues and ALL parties, and ALL prior interlocutory Orders of the Court in this case are hereby made final." [Farr Ex. Nos. 3, 5.] In this matter, the Default Judgment and Default Judgment *Nunc Pro Tunc* not only dispose of

all parties and issues before the court but each one also "states with unmistakable clarity that it is a final judgment as to all claims and all parties." *See Lehmann*, 39 S.W.3d at 192-93. Therefore, the Default Judgment *Nunc Pro Tunc* is a final judgment, as was the Default Judgment when it was rendered.

> **2.     The Debtor asks this Court to conduct what in substance would be an appellate review of the Default Judgment *Nunc Pro Tunc*.**

The Debtor asserts that "[t]he Judgment and the default judgment are void based solely upon the failure to serve the proper party," and that this Court should therefore deny Farr's Claim. [Docket No. 94, ¶ 21.] In doing so, the Debtor is asking this Court to "review, modify, or nullify a final order of a state court" in violation of the *Rooker-Feldman* doctrine. *Kimball v. Florida Bar*, 632 F.2d 1283, 1284 (5th Cir. 1980) (quoting *Lampkin v. Supreme Court of Florida*, 601 F.2d 760 (5th Cir. 1979)); *see also Liedtke*, 18 F.3d at 317 (quoting *Kimball*, 632 F.2d at 1284); *Reitnauer v. Texas Exotic Feline Found. (In re Reitnauer)*, 152 F.3d 341, 344 (5th Cir. 1998) (finding "that the district court violated the letter of the *Rooker-Feldman* doctrine by sitting in appellate review of the state court judgment").

However, with regard to the preclusive effect of state court judgments in federal court, the Fifth Circuit has explained as follows:

> *Rooker-Feldman* casts in jurisdictional terms a rule that is very close if not identical to the more familiar principle that a federal court must give full faith and credit to a state court judgment. To satisfy the full faith and credit requirement, a federal court must give the same deference to a state court judgment that a court of the rendering state would give it. We decline to apply *Rooker-Feldman* in a way that would require a federal court to give greater deference to a state court judgment than a court of the state in which the judgment was rendered would give it.

*Gauthier*, 831 F.2d at 561 (citations omitted); *see also In re Lease Oil Antitrust Litig. (No. II)*, 200 F.3d 317, 320 (5th Cir. 2000) (stating: "The Full Faith and Credit Act requires a federal court to give state court judgments the same preclusive effect they would have in another court of the same state."

(citation omitted)).  Despite the Debtor's contentions otherwise, the Default Judgment *Nunc Pro Tunc* is not void due to defective service of citation.  Because the Default Judgment *Nunc Pro Tunc* is a valid judgment, and because the Debtor sought no relief from the Default Judgment *Nunc Pro Tunc* in Texas state courts, this Court must give the Default Judgment *Nunc Pro Tunc* the same preclusive effect a Texas state court would give it and allow Farr's Claim based on the Default Judgment *Nunc Pro Tunc*.

### a.    Service of Citation in Farr's State Court Suit was not defective.

The Debtor contends that the Default Judgment *Nunc Pro Tunc* is void because it was not served on the proper party and because the service and return of service (the Return) of the related Citation did not meet the strict compliance required under Texas law. [Docket No. 91, ¶¶ 15-16, 21.] Central to this contention is the Debtor's assertion that its name is "Nazu, Inc. d/b/a 7 Evening Food Store," instead of "Nazu, Inc, d/b/a 7 Evenings Food Stores" as it appears on Farr's State Court Petition and related Citation and Return.

Under Texas law, "[s]ervice of citation must be in strict compliance with the rules of civil procedure to establish jurisdiction over a defendant and support a default judgment." *Williams v. Williams*, 150 S.W.3d 436, 443 (Tex. App.—Austin 2004, pet. denied) (citing *Wilson v. Dunn*, 800 S.W.2d 883, 836 (Tex. 1990); *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985); *Barker CATV Constr., Inc. v. Ampro, Inc.*, 989 S.W.2d 789, 792 (Tex. App.—Houston [1st Dist.] 1999, no pet.)).  Service of process is invalid if strict compliance cannot be demonstrated. *Williams*, 150 S.W.3d at 443 (citing *Uvalde*, 690 S.W.2d at 885).

The Debtor cites *Primate Construction, Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994), for the rule that "strict compliance with the rules for service of citation [must] affirmatively appear on the record in order for default judgment to withstand direct attack." (citations omitted); [Docket No.

94, ¶¶ 16.] Here, the Debtor's "direct attack" on the Citation is that the Citation and the Return indicate service on "7 Evenings Food Stores" and not the "7 Evening Food Store" that the Debtor owns. [Docket No. 94, ¶¶ 15-18.]

However, *Primate* also notes that the return of service "has long been considered prima facie evidence of the facts recited therein. The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party." *Primate*, 884 S.W.2d at 152 (citations omitted). Additionally, Texas Rule of Civil Procedure 107 sets forth the following requirements for service:

> The return of the officer or authorized person executing the citation [1] shall be endorsed on or attached to the same; [2] it shall state when the citation was served and [3] the manner of service and be signed by the officer officially or by the authorized person. [4] The return of citation by an authorized person shall be verified. When the citation was served by registered or certified mail as authorized by Rule 106, [5] the return by the officer or authorized person must also contain the return receipt with the addressee's signature. [6] When the officer or authorized person has not served the citation, the return shall show the diligence used by the officer or authorized person to execute the same and the cause of failure to execute it, and where the defendant is to be found, if he can ascertain.

The Return of the Citation meets all of these requirements and indicates service of Farr's Petition on:

NAZU, INC. DBA 7 EVENINGS FOOD STORES

a Corporation, by delivering to:

AZIZ SHAH
REGISTERED AGENT of said Corporation

in person, a true copy of this Citation together with the accompanying:

PLAINTIFF'S ORIGINAL PETITION

attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially the  13  day of  May  2002.

[Farr Ex. No. 2.]

Shah testified that he was served with Farr's Petition.  Shah also testified that after he read

Farr's Petition, he knew that his corporation, the Debtor, did not own the 7 Evenings Food Store(s)

at 8900 S. Braeswood where Farr alleged she was assaulted and falsely imprisoned by the Individual

Defendants.  Shah also testified that he was aware that he had no affiliation with the Individual

Defendants.  Shah contacted his attorney about Farr's Petition.  After discussions with his attorney,

Shah took no further action on Farr's State Court Suit.

As noted above, the Debtor asserts that the Default Judgment *Nunc Pro Tunc* is void because

of failure to serve the correct party and then cites purported defects in the Return and Citation.  [*See*

Docket Nos. 80, 94.]  The only evidence the Debtor introduced to corroborate these assertions is the

testimony of Shah as set forth above and a Direct Index of Assumed Name Records certified by a

Deputy Clerk in the Harris County Clerk's Office (the Index).  [Debtor's Ex. 16.]  While the Index

does show a 7 Evening Food Store located at 525 Crosstimbers and shows a Nazu, Inc. under the

entry, it also shows a 7 Evening Food Store and a 7 Evenings Food Store located on 8900 S.

Braeswood #A, with Salaymeh Mohyadien listed under the entries, and a notation of "EXPIRED"

next to both entries.  *Id.*  The Index further shows a 7 Evenings Food Store at 521 and 525

Crosstimbers, with Shah Aziz Urrehman under the entry, and with "EXPIRED" next to the entry.

*Id.*

Even considering the Index, the return of service is "prima facie evidence of the facts recited

therein."  *Primate*, 884 S.W.2d at 152.  The Return recites that Farr's Petition was served on the

Debtor through Shah.  [Farr Ex. No. 2.]  Therefore, the Return is not defective and cannot be a basis

for this Court vacating the Default Judgment *Nunc Pro Tunc*.

Additionally, the Debtor's complaints regarding the Citation fail to form a basis for this Court to give the Default Judgment *Nunc Pro Tunc* no effect.  Under Texas Rule of Civil Procedure 99b, citation must comply with the following twelve requirements to be valid:

(1)     be styled "The State of Texas,"
(2)     be signed by the clerk under seal of court,
(3)     contain name and location of the court,
(4)     show date of filing of the petition,
(5)     show date of issuance of citation,
(6)     show file number,
(7)     show names of parties,
(8)     be directed to the defendant,
(9)     show the name and address of attorney for plaintiff, otherwise the address of plaintiff,
(10)    contain the time within which these rules require the defendant to file a written answer with the clerk who issued citation,
(11)    contain address of the clerk, and
(12)    shall notify the defendant that in case of failure of defendant to file an answer, judgment by default may be rendered for the relief demanded in the petition.

*Williams*, 150 S.W.3d at 443 (citing TEX. R. CIV. P. 99b).  The Citation in the State Court Suit meets all of these requirements and is therefore a valid citation.  [Farr Ex. 2.]

In sum, service of the Citation in Farr's State Court suit was not defective for three reasons.  First, the Return meets all of the requirements for service set forth in Texas Rule of Civil Procedure 107.  Second, the Return indicates service on the Debtor.  And third, the Citation meets all of the requirements set forth in Texas Rule of Civil Procedure 99b.  As such, the Default Judgment *Nunc Pro Tunc* is not void.

### b.     This Court must give the Default Judgment *Nunc Pro Tunc* the same deference that a Texas state court would.

Having found that the Citation in the State Court Suit is valid, this Court is mindful that Texas courts have held that service against the wrong party will not support a default judgment. *See e.g., Dezso v. Harwood*, 926 S.W.2d 371, 373 (Tex. App.—Austin 1996, writ denied).  However, such cases have held that "when the *incorrect* defendant is served with citation, a default judgment

15

against such incorrect defendant cannot extend to cover the *correct* defendant . . . ." *Id.* Whether the Default Judgment *Nunc Pro Tunc* can extend to cover the correct defendant in Farr's State Court Suit is not at issue in this dispute. Moreover, in such cases, the defendant against whom a default judgement or summary judgment was wrongfully rendered either sought relief at the trial level or through the proper appellate procedures. *See, e.g., Barker CATV Constr.*, 989 S.W.2d at 793 (listing similar cases and reversing a default judgment rendered against an appellant that filed a restricted appeal[8] arguing that return of service was defective because it reflected service on the appellant's registered agent and not on the appellant); *Dezso*, 926 S.W.2d at 373 (listing cases and affirming default judgment when party appealed no-answer default judgment by filing a writ of error to the appellate court). Here, the Debtor elected not to avail itself of any remedies available in Texas state courts. As noted above, the Fifth Circuit has "decline[d] to apply *Rooker-Feldman* in a way that would require a federal court to give greater deference to a state court judgment than a court of the state in which the judgment was rendered would give it." *Gauthier*, 831 F.2d at 561 (citations omitted); *see also Lease Oil*, 200 F.3d at 320. Giving the Default Judgment *Nunc Pro Tunc* "no greater deference" than a Texas state court would give it, this Court concludes that it cannot provide Debtor with relief from the Default Judgment *Nunc Pro Tunc*. *Gauthier*, 831 F.2d at 561 (citations omitted).

---

[8]Under Texas law, restricted appeals were known as writs of error prior to 1997. *See Fid. & Guar. Ins. Co. v. Drewery Constr. Co., Inc.*, 186 S.W.3d 571, 573 (Tex. 2006). As one Texas court of appeals has explained: "Restricted appeals replace writ of error appeals to the court of appeals. Statutes pertaining to writ of error appeals to the court of appeals apply equally to restricted appeals." *Blackburn v. Citibank (South Dakota) N.A.*, 2006 WL 1629770, at *1 (Tex. App.—Dallas June 14, 2006) (citing TEX. R. APP. P. 30) (unreported opinion).

    i.    **Even if the Debtor was misidentified in Farr's State Court Suit, the Debtor was aware of any misidentification and was notified that its inaction would result in a default judgment rendered against it.**

In cases like the instant dispute, Texas courts have set forth the following rule regarding misnomer and misidentification of defendants:

> Texas courts have recognized a distinction between misnomer and misidentification. If the plaintiff merely misnames the correct defendant (misnomer), limitations is tolled and a subsequent amendment of the petition relates back to the date of the original petition. If, however, the plaintiff is mistaken as to which of two defendants is the correct one and there is actually existing a corporation with the name of the erroneously named defendant (misidentification), then the plaintiff has sued the wrong party and limitations is not tolled.

*Enserch Corp. v. Parker*, 794 S.W.2d 2, 4-5 (Tex. 1990) (citation omitted).[9]

For example, in *Dezso*, upon a writ of error, the defendant against whom the default judgment was rendered asserted that the default judgment was invalid because she was not an intended party to the suit. 926 S.W.2d at 373. The defendant reasoned that she was not the intended party because she was not named in the citation accompanying the plaintiff's petition. *Id.* In affirming the default judgment, the court noted that "Texas case law supports the principle that unless the pleadings and citation actually mislead the misnamed defendant, a default judgment will not be rendered void." *Id.* at 374 (citing *Baker v. Charles*, 746 S.W.2d 854, 855 (Tex.

---

[9] For example, in *Krenek v. Epps Super Market No. 2, Inc.*, 377 S.W.2d 753, 754 (Tex. Civ. App.—Austin 1964, no writ), the plaintiff filed a state court suit against "Epps Super Market, Inc., with a place of business and an agent for service at 1356 Federal Road in Houston, Harris County, Texas," alleging that the plaintiff was injured when he slipped and fell in the store. The defendant answered and filed for summary judgment asserting that it did not own the property where the plaintiff fell and that the property was owned by a different corporation: Epps Super Market No. 2, Inc., located at 8427 East Houston Road. *Id.* The trial court granted summary judgment and granted the plaintiff leave to amend his petition. *Id.* at 754-55. The plaintiff amended his petition, suing Epps Super Market No. 2, Inc., located at 8427 East Houston Road. *Id.* at 755. Epps Super Market No. 2, Inc. filed for summary judgment asserting that the two-year statute of limitations barred the plaintiff's suit. *Id.* The trial court granted summary judgment. *Id.* The appellate court affirmed, noting that the plaintiff did not misname the defendant, rather the plaintiff was mistaken as to the identity of the proper defendant. *Id.* at 756-57. The appellate court held that the summary judgment was proper because Epps Super Market No.2, Inc. was not responsible for the mistake in identity and because the applicable statute of limitations barred the plaintiff's cause of action against Epps Super Market No. 2, Inc. *Id.* at 756.

App.—Corpus Christi 1988, no writ); *Cockrell v. Estevez*, 737 S.W.2d 138, 140 (Tex. App.—San

Antonio 1987, no writ). However, unlike the Debtor, the defendants seeking relief from the default

judgments in these cases were the intended defendants misnamed in some form in the citation,

pleadings, or judgment. *See id.*

Even though the Debtor may not be the intended defendant in Farr's State Court Suit, this

Court finds that when the Debtor was served with Farr's petition, it was neither misled with respect

to any misidentification in Farr's Petition nor was it misled regarding whether failure to answer

would lead to a default judgment. In holding that a citation in which the defendant's name was

misspelled was not defective, one Texas court of appeals explained that "[a] petition should serve

its designed purpose 'to define the issues at trial' . . . and provide[] the defendant 'information

sufficient to enable him to prepare a defense.'" *Cockrell*, 737 S.W.2d at 140 (quoting *Murray v. O

& A Express, Inc.*, 630 S.W.2d 633, 636 (Tex. 1982); *Roark v. Allen*, 633 S.W. 2d 804, 810 (Tex.

1982)).

The Debtor's registered agent, Shah, testified that when he was served with the petition, he

realized that the Debtor had no affiliation with the 7 Evenings Food Stores on South Braeswood or

with the Individual Defendants who were employed there. Additionally, as required by Texas Rule

of Civil Procedure 99b, the Citation accompanying Farr's Petition stated as follows:

> YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR
> YOUR ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE
> COUNTY CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE
> MONDAY FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU
> WERE SERVED THIS CITATION AND PETITION, A DEFAULT JUDGMENT
> MAY BE TAKEN AGAINST YOU.

[Farr Ex. No. 2.] However, the Citation and Return correctly indicated service on the Debtor, Nazu,

Inc., through its registered agent, Shah, at its business address at 525 Crosstimbers, Houston, Texas

77022. [Farr Ex. No. 1.] The Petition served on the Debtor defined the issues to be tried, including

18

the issue regarding whether the Debtor owned the 7 Evenings Food Stores on South Braeswood and whether the Individual Defendants were the Debtor's agents acting within the scope of their employment when they caused Farr's injuries. *See Cockrell*, 737 S.W.2d at 140 (citations omitted); [Farr Ex. No. 1].

Further, the Debtor's failure to answer Farr's Petition is deemed an admission of the factual allegations in the Farr's State Court Petition with the exception of unliquidated damages. *See Texaco, Inc. v. Phan*, 137 S.W.3d 763, 769 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Holt Atherton Indus. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984)).   The Debtor's failure to answer the Petition also conclusively established its liability as to the causes of action alleged in the Petition. *See Texaco*, 137 S.W.3d at 769 (citations omitted).   Farr's State Court Petition defined "Nazu, Inc., d/b/a 7 Evenings Food Stores" as "Defendant 'company.'"   Farr's Petition further alleged as follows:

> Defendant Company is a corporation duly formed and existing under the laws of the State of Texas and may be served with citation through its registered agent, Aziz Shah, 525 Crosstimbers, Houston, Texas 77022.
> . . . .
>
> At all times mentioned in this petition, Defendant company was engaged in the retail merchandise business known as 7 Evenings Food Stores at 8900 S. Braeswood, Houston, Harris County, Texas 77074.
>
> IV.
>
> The individual Defendants named herein were employed by Defendant company and were on the occasion described herein acting as agents and employees in the course and scope of their employment when the incident the basis of this lawsuit occurred.
> . . . .
>
> VI.
>
> Plaintiff was maliciously assaulted by Defendants Sajjad Khan and Khurram Khan. She suffered and continues to suffer as a result of physical injury wrongfully

inflicted by Defendants Sajjad Khan and Khurram Khan.  Plaintiff was locked inside against her will while being wrongfully assaulted.

VII.

As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff, Temeka R.  Farr has incurred the following damages: . . . .

[Farr Ex. No. 1, pp. 1-2.]  When the Debtor failed to answer Farr's Petition, it was deemed to have admitted all of these allegations, including the allegations that it owned the 7 Evening Food Store located on South Braeswood, that it employed the Individual Defendants, and that the Individual Defendants were under the scope of employment of the Debtor and were the Debtor's agents at the time that they assaulted and falsely imprisoned Farr.  *See Texaco*, 137 S.W.3d at 769 (citing *Holt*, 835 S.W.2d at 83; *Morgan*, 675 S.W.2d at 731)).

While the Debtor's failure to answer Farr's Petition is deemed an admission of the factual allegations in the Farr's State Court Petition, a Texas state court rendering a default judgment must hear evidence regarding unliquidated damages. *Holt*, 835 S.W.2d at 82; TEX. R. CIV. P. 243 (Vernon 2004).  Farr's damages arose from the injuries she alleged occurred when the employees of the 7 Evenings Food Stores assaulted her.  [Farr Ex. No. 1.]  Personal injury damages such as Farr's are unliquidated.  *Aavid Thermal Techs. v. Irving Indep. Sch. Dist.*, 68 S.W.3d 707, 711 (Tex. App.—Dallas 2001, no pet.) (citing *Jones v. Andrews*, 873 S.W.2d 102, 107 (Tex. App.—Dallas 1994, no writ)).  Therefore, a hearing in which the State Court received evidence on damages was necessary before the State Court could render its final default judgment. TEX. R. CIV. P. 243; *Aavid*, 68 S.W.3d at 711.

Farr has not submitted to this Court any motion for default judgment filed in State Court or any notice of April 16, 2004 hearing that she may have forwarded to the Debtor.  Nevertheless, Counsel for Farr represented to this Court at the May 26, 2006 hearing that notices of the

proceedings in Farr's State Court Suit were sent to the Debtor, and the Debtor does not dispute that it received notice of the April 16, 2004 hearing. [*See* Farr Ex. No. 3, 5; Debtor Ex. No. 9.] Further, the Default Judgment and Default Judgment *Nunc Pro Tunc* rendered by the State Court indicate: "The hearing on this cause was held on the 16th day of April 2004," and specify the amounts of damages and attorney's fees that the State Court awarded to Farr. [Farr Ex. Nos. 3, 5.] Additionally, Farr's Plaintiff's Exhibit List was filed with the State Court on April 16, 2004, listing the following exhibits:

1. Plaintiff's Picture;
2. Picture of Plaintiff's Shirt;
3. Secretary of State Corporation Inquiry (7 Evenings Store Assumed Name);
4. Secretary of State Corporation Inquiry (Registered Agent);
5. Affidavit of Medical Records from Memorial Herman (sic) Southwest Hospital; and
6. Affidavit of Billing Records from Memorial Herman (sic) Southwest Hospital.

[Debtor Ex. No. 9.]   After reviewing this evidence, the State Court judge rendered the Default Judgment on May 26, 2004 and set forth the amounts of damages awarded to Farr. [Farr Ex. No. 3.] When the Debtor chose not to appear at the hearing on the Default Judgment and assert that it was not the correct party and that the damages rendered against him were improper, it did so at its own peril. *See Gober*, 100 F.3d at 1202 (finding that when the debtor chose not to appear at the hearing at which the state court default judgment was rendered against him, "he did so at his own peril.") The Debtor may not now seek this Court's assistance in overturning the Default Judgment *Nunc Pro Tunc*.

> ii.   **The Debtor chose not to avail itself of any of the remedies available under Texas law, and the Default Judgment *Nunc Pro Tunc* is not immediately appealable to this Court.**

The Debtor seeks relief from the Default Judgment *Nunc Pro Tunc* from this Court when it failed to avail itself of any of the remedies available in the Texas state courts.   In applying the *Rooker-Feldman* doctrine, the Supreme Court has explained that, "a party losing in state court is

21

barred from seeking what in substance would be appellate review of the state judgment in a United States district court." *Johnson*, 512 U.S. at 1005. Further, the Fifth Circuit cautioned that a federal district court "violated the letter of the *Rooker-Feldman* doctrine by sitting in appellate review of the state court judgment," and, "[w]hile [the state court] adjudication was immediately appealable to the Texas Court of Appeals, it was not appealable, immediately or otherwise, to the federal courts." *Reitnauer*, 152 F.3d at 344. The Fifth Circuit has also "explained that a party collaterally attacking a state court judgment cannot circumvent *Rooker-Feldman's* reach by deliberately bypassing available state procedures for judicial review." *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004). The Default Judgment *Nunc Pro Tunc* was not immediately appealable to this Court; and this Court will not permit the Debtor to avoid *Rooker-Feldman's* reach by consciously failing to avail itself of any of the remedies available under Texas state law. *See id*; *Reitnauer*, 152 F.3d at 344.

In a similar case, *United States v. Shepherd*, 23 F.3d 923, 925 (5th Cir. 1994), the Fifth Circuit refused to allow a party to seek relief from a state court judgment in federal court when that party failed to avail itself of the proper procedures to appeal the state court judgment as the Debtor has done in this matter. The United States government sought relief in federal court from a default judgment rendered in Texas state court. *Id.* at 924. The government contended that the state court judgment was void and that it was unaware of state court proceedings and therefore did not have an opportunity to present evidence to the state court. *Id.* In holding that the federal district court had no jurisdiction to review or disturb the state court judgment, the Fifth Circuit found that the state court judgment was not void under Texas law and that the government failed to avail itself of any of the state court remedies available to appeal the judgment. *Id.*

In the instant dispute, the Debtor also failed to avail itself of any of the remedies available in Texas state court. The Debtor could have made a direct attack on the Default Judgment by a motion for new trial within 30 days of the date the Default Judgment was signed.[10] *See* TEX. R. CIV. P. 329b; *Shepherd*, 23 F.3d at 925; *Glunz v. Hernandez*, 908 S.W.2d 253, 255 n.3 (Tex. App.—San Antonio 1995, writ denied). The Debtor could have also filed a restricted appeal (formerly known as a writ of error)[11] up to six months after the Default Judgment was signed. TEX. R. APP. P. 30; *Shepherd*, 23 F.3d at 925. A restricted appeal allows a defendant who did not participate at the hearing in which the judgment was rendered to obtain review of the judgment in a Texas court of appeals. *Id.* The Debtor chose not to pursue this avenue.

Finally, Texas law allows for a bill of review, in which a party may directly attack a judgment up to four years after the judgment is signed. *Shepherd*, 23 F.3d at 925. The Debtor, through its sole

---

[10]Any appellate deadlines would run from May, 26, 2006, the day the Default Judgment was signed. Under Texas law, the Default Judgment *Nunc Pro Tunc* signed on September 23, 2004 extended the appellate deadlines for complaints about matters not in the Default Judgment signed on May 26, 2004. *Amato v. Hernandez*, 981 S.W.2d 947, 950 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (citations omitted). The Default Judgment *Nunc Pro Tunc* served only to correct clerical errors. [*See* Finding of Fact 11.] Texas law provides: "After the trial court loses its jurisdiction over a judgment, it can correct only clerical errors in the judgment by judgment nunc pro tunc." *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986). A clerical error is an error in the entering of a judgment, while a judicial error is an error in the rendering of a judgment. *Id.* (citations omitted.) One Texas court of appeals explained that "[a] clerical error is a mistake or omission in the entry of a judgment in the official record and the judgment as it was actually rendered. In contrast, a judicial error is an error arising from a mistake of law or fact that requires judicial reasoning or determination to correct." *LaGoye v. Victoria Wood Condo. Ass'n.*, 112 S.W.3d 777, 783 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citations omitted). Examples of valid *nunc pro tunc* orders are clerical corrections the date of judgment, a party's name, and numerical errors. *Id.* at n.8.

The only differences between the Default Judgment and the Default Judgment *Nunc Pro Tunc* are: (1) the Default Judgment is captioned "TEMEKA R. FARR, Plaintiff VS. NAZU, INC. d/b/a 7 EVENINGS FOOD STORES, et al Defendants," and the Default Judgment *Nunc Pro Tunc* is captioned "TEMEKA R. FARR, Plaintiff VS. NAZU, INC. d/b/a 7 EVENINGS FOOD STORES, SAJJAD KHAN and KHURRAM KHAN Defendants;" (2) the Default Judgment has a line marked through the "THREE (3)" in "IN THE COUNTY CIVIL COURT AT LAW NUMBER THREE (3)" and ""ONE (1)" handwritten in its place, and the Default Judgment *Nunc Pro Tunc* has "IN THE COUNTY COURT AT LAW NUMBER ONE (1)" typewritten; and (3) in the Default Judgment *Nunc Pro Tunc*, "*Nunc Pro Tunc*" is handwritten next to the title "DEFAULT JUDGMENT." [Farr Ex. Nos. 3, 5.]

The Default Judgment *Nunc Pro Tunc* extended the appellate deadlines for complaints about matters not in the Default Judgment. *Amato*, 981 S.W.2d at 950. The Debtor complains that is it not the responsible party in the State Court Suit. Because the Debtor's complaints are about matters in the Default Judgment, and not about the matters corrected in the Default Judgment *Nunc Pro Tunc*, the appellate deadlines would run from May 26, 2004, the day that the Default Judgment was signed.

[11]*See supra* at footnote 8.

officer, Shah, consciously chose not to avail itself of this or any other state court remedy even though the Debtor knew that such inaction would result in a default judgment against it and even though a copy of the Default Judgment was sent to it.

Under the similar circumstances in *Shepherd*, the Fifth Circuit found as follows:

"[W]e . . . conclude that the government, by bringing this action in federal court, made the conscious decision to forego several potentially effective state court remedies.
. . . .

It may be that the government has now forfeited some of these remedies by failing to exercise rights in the state court. However, such a forfeiture cannot be blamed on anyone but the government. The government made a conscious decision to ignore the state court's jurisdiction, and now it must live with the consequences of that decision.

*Id.*

In the instant dispute, the Debtor was served with the State Court Suit, which it referred to its attorney. The Debtor took no further action to avail itself of any of the available state court remedies. As in *Shepherd*, some of the remedies from the Default Judgment may no longer be available to the Debtor. *Id.* Also, as in *Shepherd*, the Debtor has no party to blame other than itself for the forfeiture of these state court remedies. *Id.* Like the government in *Shepherd*, the Debtor "made a conscious decision to ignore the state court's jurisdiction, and now it must live with the consequences of that decision." *Id.*

**B.    Farr's Proof of Claim provides a proper accounting.**

The Debtor also objects to Farr's Proof of Claim, claiming that it fails to provide a proper accounting by showing neither facts nor proper amounts due. [Docket No. 80, ¶ 3.] Federal Rule of Bankruptcy Procedure 3001 concerns proofs of claim and provides as follows:

**(a) FORM AND CONTENT.** A proof of claim is written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.

. . . .

**(f) EVIDENTIARY EFFECT.** A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

The Official Form for filing a proof of claim, Form B10 (Official Form 10), states as follows:

"**Supporting Documents:** *Attach copies of supporting documents*, such as . . . court judgments . . . ." *See In re Armstrong*, 320 B.R. 97, 102 (Bankr. N.D. Tex. 2005) (quoting Form B10 (Official Form 10)). Additionally, "Sections 501 and 502 of the Bankruptcy Code and Bankruptcy Rule 3001 provide that 'a party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets." *Armstrong*, 320 B.R. at 102 (Bankr. N.D. Tex. 2005) (quoting *California State Bd. of Equalization v. Official Unsecured Creditors' Comm. (In re Fid. Holding Co.)*, 837 F.2d 696, 698 (5th Cir. 1988)). Unless the objecting party produces evidence rebutting the claim, the claimant will prevail. *Id.* (citing *Fid. Holding Co.*, 837 F.2d at 698). If the objecting party produces rebuttal evidence, then the claimant must produce additional evidence to prove its claim by a preponderance of the evidence. *Id.* at 102-03 (citing *Fid. Holding Co.*, 837 F.2d at 698). "However, the ultimate burden of proof lies with the party who would bear the burden if the dispute arose outside of the bankruptcy context." *Id.* (citing *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000)).

In the instant matter, Farr filed her Proof of Claim using Official Form 10 and attached the Abstract of Judgment issued by the Harris County Clerk and the related Default Judgment *Nunc Pro Tunc* setting forth the amounts of damages that the State Court awarded. [Claim No. 12.] The

*Armstrong* court noted: "A 'properly filed' proof of claim, as proscribed[12] by the Judicial Conference in Official Form 10, consists of '(1) a creditor's name and address, (2) basis for claim, (3) date debt incurred, (4) amount of claim, (5) classification of claim, and (6) supporting documents.'" *Armstrong*, 320 B.R. at 104 (citations omitted).  Farr's Proof of Claim meets all of these requirements because it lists the following: (1) Farr's name and address; (2) "Personal Injury - Civil Judgment" as the basis for her Claim; (3) May 26, 2004 as the date that she obtained the Default Judgment;[13] (4) "$30,125.00" as the amount of her Claim; (5) "Unsecured Nonpriority Claim" as the classification of the Claim; and (6) the Abstract of Judgment issued by the Harris County Clerk and the related Default Judgment *Nunc Pro Tunc* as supporting documents. [Claim No. 12.]  Because Farr correctly filed her Proof of Claim, she is deemed to have established a prima facie case against the Debtor's assets. *See Armstrong*, 320 B.R. at 102 (quoting *Fid. Holding Co.*, 837 F.2d at 698).

Because the Debtor has produced no evidence to rebut Farr's Claim, Farr need not produce additional evidence to prove her Claim beyond a preponderance of the evidence. *See id.* at 102-03 (citing *Fid. Holding Co.*, 837 F.2d at 698).  The Court accordingly finds that Farr filed her Proof of Claim in conformity with the applicable rules and further finds that it is a valid proof of claim.

**C.    Farr's violations of the automatic stay were committed unknowingly, and her Claim will be allowed and paid pursuant to the plan confirmed in this case.**

As previously noted, the Debtor filed its Chapter 11 petition on August 6, 2004. [Docket No. 1.]  The Default Judgment was rendered on May 26, 2004, and Farr obtained the Default Judgment *Nunc Pro Tunc* on September 23, 2004 to correct minor clerical errors.  [Farr Ex. Nos. 3, 5; Docket

---

[12]The Court notes that although the *Armstrong* court used the word "proscribed," it probably meant to use the word "prescribed."

[13]Instead of providing a date in the space labeled "2. Date debt was incurred," Farr indicated, "May 26, 2004," in the space labeled "3. If court judgment, date obtained." [Claim No. 12.]

No. 96, ¶ 9.]  Farr then attempted to execute on the Default Judgment *Nunc Pro Tunc* between the

months of January and April of 2005.  [*See* Debtor Ex. No. 12.]

The Debtor asserts that because Farr obtained the Default Judgment *Nunc Pro Tunc* on

September 23, 2004, after the Debtor filed its bankruptcy petition [Docket No. 80, ¶ 3], Farr's Claim

was therefore obtained in violation of the stay and should be barred.[14]  *Id.*  In contrast, Farr asserts

that she obtained the Default Judgment against the Debtor on May 26, 2004, before the Debtor filed

for bankruptcy, and that therefore her claim should be deemed as timely filed. [Farr Ex. No. 3.]

1.     **Farr was unaware of the existence of the automatic stay because the Debtor**
       **failed to schedule her as a creditor.**

Because the Debtor failed to schedule Farr as a creditor, Farr did not learn that the Debtor

was in bankruptcy until she attempted to execute on the Default Judgment *Nunc Pro Tunc.*  Even

though the State Court sent the Debtor notice of the Default Judgment against it on May 26, 2004,

and notice of the Default Judgment *Nunc Pro Tunc* on September 27, 2004, the Debtor failed to

include Farr as a creditor in its petition or schedules.  [Farr Ex. Nos. 4, 6; Docket Nos. 1, 8.]

Regarding notice to creditors, the Fifth Circuit has held as follows:

> It is well settled that if a debtor lists incorrectly the name or address of a creditor in
> the required schedules, so as to cause the creditor not to receive notice, that creditor's
> debt has not been "duly scheduled" within the meaning of the [Bankruptcy Code],
> and if the creditor has no actual knowledge of the bankruptcy proceeding, the
> creditor's debt is not dischargeable.

*Bonner v. Adams (In re Adams)*, 734 F.2d 1094, 1098 (5th Cir. 1984) (citation omitted).  To ensure

Fifth Amendment due process, a creditor's claim cannot be disallowed for failure to file a timely

proof of claim when the creditor had no notice of the debtor's bankruptcy. *In re Rodriguez*, 225 B.R.

---

[14] The Default Judgement *Nunc Pro Tunc* was abstracted on November 3, 2004, which was after the Debtor filed his bankruptcy petition on August 6, 2004. [Farr Ex. No. 7; Docket No. 1.] However, the date that the Default Judgment was abstracted is irrelevant as any lien on real estate is not a lien on property of the estate because the Debtor owns no real estate.  Rather, the Debtor leases the property at 525 Crosstimbers where the 7 Evening Food Store is located. [Docket No. 8, Schedule G.] Accordingly, Farr holds no secured claim in this case.

628, 631 n.10 (Bankr. S.D. Tex. 1998).  As Farr lacked notice of the Debtor's bankruptcy because the Debtor failed to schedule her as a creditor, her claim will not be disallowed.

> **2.      Farr's acts in violation of the automatic stay were committed unknowingly and are not void.**

When the Debtor filed its bankruptcy petition, the automatic stay went into effect, preventing creditors from taking any action against the Debtor.  *See* 11 U.S.C. § 362(a).  Section 362 provides, in pertinent part, as follows:

> (a) . . . a petition filed under [the Bankruptcy Code] . . . operates as a stay, applicable to all entities of–
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(a)(1).

The Default Judgment was rendered prior to the Debtor filing its petition.  [Farr Ex. No. 3; Docket No. 1.]  However, Farr sought the Default Judgment *Nunc Pro Tunc*, obtained the Abstract of Judgment, and attempted to execute on the Default Judgment *Nunc Pro Tunc* after the Debtor filed for bankruptcy.  These actions violated the automatic stay because the stay is effective upon the filing of the case, regardless of notice to potential creditors.  *See Elbar Invs., Inc. v. Pierce* (*In re Pierce*), 272 B.R. 198, 203 (Bankr. S.D. Tex. 2001), *aff'd*, 91 Fed. Appx. 927 (5th Cir. 2004) (citations omitted).  Consequently, even though Farr was unaware of the Debtor's bankruptcy when she sought the Default Judgment *Nunc Pro Tunc*, obtained the Abstract of Judgment, and attempted to execute on the Default Judgment *Nunc Pro Tunc*, these actions violated the automatic stay because they were committed after the Debtor filed its bankruptcy petition.

However, the Fifth Circuit has recognized that, "[i]n section 362(d), Congress empowered the court to grant relief from the automatic stay 'by terminating, annulling, modifying, or conditioning' the stay." *Sikes*, 881 F.2d at 178 (quoting 11 U.S.C. § 362(d)). The Fifth Circuit has further determined that, pursuant to § 362(d), bankruptcy courts have the authority to "annul" the automatic stay to "operate retroactively to the date of the filing of the petition which gave rise to the stay, and thus validate actions taken by the party at a time when he may have been unaware of the existence of the stay." *Sikes*, 881 F.2d at 179 (quoting 2 COLLIER'S BANKRUPTCY MANUAL § 362.06 (3d ed. 1983).[15]

The Fifth Circuit has recognized that "[i]t is well-settled that actions 'taken in violation of the automatic stay are not *void* but rather they are merely *voidable*, because the bankruptcy court has the power to annul the automatic stay pursuant to section 362(d).'" *Jones v. Garcia (In re Jones)*, 63 F.3d 411, 412 (5th Cir. 1995) (quoting *Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990) (citing *Sikes v. Global Marine, Inc.* 881 F.2d 176 (5th Cir. 1989)). In reaching this conclusion, the Fifth Circuit relied on several cases, including *In re Smith Corset Shops, Inc.*, 696

---

[15] 11 U.S.C. § 362(d) authorizes the Court to terminate, annul, modify, or condition the stay "[o]n the request of a party." One bankruptcy court in this Circuit has observed that an act in violation of the stay is "invalid and of no effect unless and until the action is made valid by subsequent judicial action annulling the automatic stay." *Ben Singleton d/b/a Equity Invs. Group v. Abusaad (In re Abusaad)*, 309 B.R. 895, 899 (Bankr. N.D. Tex. 2004) (citing *Pierce*, 272 B.R. 198, 207 n.21); *see also Bustamante v. Cueva (In re Cueva)*, 371 F.3d 232, 236 (5th Cir. 2004) (noting that in the bankruptcy court and district court below, no party requested retroactive relief from the stay, and no relief was granted). Farr's response to the Debtor's Objection is titled "Creditor Temeka Farr's Response to Objection to Claim Filed by Debtor, Motion to Deem Proof of Claim as Timely Filed, and Request for Hearing." [Docket No. 88.] Equity demands that this Court construe Farr's Motion to Deem Proof of Claim as Timely Filed as a request for retroactive relief from the stay. *See Jones v. Garcia (In re Jones)*, 63 F.3d 411, 412-13 n.5 (5th Cir. 1995). In affirming a grant of retroactive relief from the automatic stay, the Fifth Circuit emphasized that the creditors in the case who violated the automatic stay were unaware that it was in effect and cited *Job v. Calder (In re Calder)*, 907 F.2d 953, 956 (10th Cir. 1990), for the proposition that "courts will apply equitable considerations at least where the creditor was without actual knowledge of a bankruptcy petition and the bankrupt's unreasonable behavior contributed to the bankrupt's plight." *Jones*, 63 F.3d at 13 n.5. Here, Farr was unaware of the existence of the automatic stay because the Debtor failed to schedule her as a creditor. [Docket No. 8.] Accordingly, Farr is entitled to be given such equitable consideration and retroactive relief from the automatic stay. Additionally, the Debtor has not objected to any failure by Farr to request retroactive relief from the automatic stay so that her Claim may be allowed as timely filed. Given these equitable considerations, the Court finds that Farr has requested relief from the stay. *See* 11 U.S.C. § 362(d).

F.2d 971 (1st Cir. 1982), noting that *Smith* held that "post-stay state court default judgment and execution of that judgment not void where debtor concealed bankruptcy filing from creditor." *Jones*, 63 F.3d at 412-13 n.5. In *Jones*, the Fifth Circuit affirmed the grant of retroactive relief from the automatic stay and noted that the creditors were unaware of the bankruptcy filing when they violated the automatic stay. *Id.* at 413. In so holding, the Fifth Circuit cited *Job v. Calder* (*In re Calder*) 907 F.2d 953, 956 (10th Cir. 1990), for the proposition that "courts will apply equitable considerations at least where the creditor was without actual knowledge of a bankruptcy petition and the bankrupt's unreasonable behavior contributed to the bankrupt's plight." *Id.* at n.5.

Farr was unaware of the automatic stay when she violated it because the Debtor failed to schedule her as a creditor. [Docket No. 8.] Accordingly, this Court finds that Farr's actions unknowingly taken in violation of the automatic stay—i.e., seeking the Default Judgment *Nunc Pro Tunc*, obtaining the Abstract of Judgment, and attempting to execute on the Default Judgment *Nunc Pro Tunc*—are not void. This Court therefore grants Farr relief from the automatic stay retroactively to the date of the Debtor's filing of its petition, so that her actions in violation of the automatic stay are not void and are hereby validated. As such, Farr's Claim will be allowed and paid pursuant to the confirmed plan in this case.

**D.    The Debtor's argument that Farr's claim is against best interests of the creditors of the bankruptcy estate is not determinative of whether the Court should allow her claim.**

Finally, the Debtor argues that "[Farr's] present claim is not in the best interests of the creditors of the estate." [Docket No. 80, ¶ 9.] The Debtor offers no authority or explanation beyond this conclusory statement to explain how this is a valid objection to Farr's Proof of Claim. Whether or not it is in the best interests of the other creditors of the estate, Farr has a valid claim as provided by § 101(5) of the Bankruptcy Code, which defines a "claim" as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5). For the reasons set forth above in this Memorandum Opinion, Farr has a "right to payment" based on the Default Judgment *Nunc Pro Tunc* and the equities in this case. Accordingly, irrespective of whether Farr's claim is in the best interests of the other creditors of the estate, Farr possesses a valid claim against the Debtor's bankruptcy estate.

## V.  CONCLUSION

The *Rooker-Feldman* doctrine prohibits this Court from reviewing the Default Judgment *Nunc Pro Tunc*. Even though the Debtor was aware that Farr's Original Petition in State Court misidentified the Debtor and that its failure to answer would result in a default judgment rendered against it, the Debtor chose not to answer Farr's Petition. Moreover, the Debtor chose not to avail itself of any of the remedies available in Texas state courts. The State Court Default Judgment *Nunc Pro Tunc* is not immediately appealable to this Bankruptcy Court, and this Court cannot grant the Debtor relief from the State Court Judgment. Additionally, Farr's Proof of Claim provides a proper accounting because it conforms to the Official Form. Further, Farr violated the automatic stay unknowingly because the Debtor failed to schedule her as a creditor. Farr's actions unintentionally taken in violation of the automatic stay—i.e., seeking the Default Judgment *Nunc Pro Tunc*, obtaining the Abstract of Judgment, and attempting to execute on the Default Judgment *Nunc Pro Tunc*—are not void. This Court grants Farr relief from the automatic stay retroactively so that her actions in violation of the automatic stay are not void and are hereby validated. Accordingly, Farr's

Claim will be allowed and paid pursuant to the confirmed plan in this case as a general unsecured claim.  Finally, the Debtor's argument that Farr's Claim is against the best interests of the creditors of the bankruptcy estate is not determinative of whether Farr possesses a valid Claim.  For these reasons, this Court overrules the Debtor's Objection, grants Farr's Motion to Deem Proof of Claim as Timely Filed, and orders that Farr's Claim shall be allowed and paid pursuant to the confirmed plan in this case.

An order overruling the Debtor's Objection and Granting Farr's Motion to Deem Proof of Claim as Timely Filed will be entered on the docket simultaneously with this Memorandum Opinion.

SIGNED on this 25th day of August, 2006.

Jeff Bohm
United States Bankruptcy Judge